Anthony DRAKE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9501–CR–25.

Court of Appeals of Indiana.

Sept. 22, 1995.

Scott L. King, King & Meyer, Gary, for appellant.

Pamela Carter, Attorney General, Mary Dreyer, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

STATON, Judge.

A jury found Anthony Drake ("Drake") guilty of possession of cocaine, a Class C felony [1], for which he was sentenced to three

---

1. IND.CODE § 35–48–4–6 (1993).

years in prison. In his appeal, Drake presents one issue for our review which we restate as whether the trial court erred in denying his motion to suppress evidence.

We affirm.

The facts most favorable to the State reveal that during an early morning patrol, Gary Police Officer Darryl Bliss ("Officer Bliss") observed a red Oldsmobile Cutlass parked in a service station parking lot. Officer Bliss returned to the service station one hour later and again noticed the parked vehicle. Officer Bliss approached the vehicle and found Drake asleep in the driver's seat with the engine running. Officer Bliss knocked on the window and shined his flashlight into the vehicle. He then noticed that the steering column had been broken, and observed two television sets and a large plastic bag in the passenger compartment.

Officer Bliss again knocked on the window and awakened Drake. Drake then made several movements with his hands including reaching for the gear shift. Officer Bliss ordered Drake to raise his hands and turn off the vehicle. After ordering Drake to raise his hands several times, Officer Bliss withdrew his revolver. Drake then raised his hands and removed himself from the vehicle. Officer Bliss reached into the vehicle and turned off the engine. Officer Bliss conducted a patdown search of Drake. During the search, Officer Bliss sensed a hard piece of material in Drake's right pants pocket. Officer Bliss told Drake to remove the item. Drake removed the item and revealed a large roll of money. While taking out the money, a plastic bag from the middle of the roll dropped to the ground. Officer Bliss retrieved the bag which was later determined to contain cocaine. Drake was arrested and charged with possession of cocaine.

Drake claims the trial court erred in denying his motion to suppress the evidence of the cocaine. We note that the trial court has broad discretion in ruling on the admissibility of evidence and in determining its relevancy.

We will disturb its ruling only upon a showing of abuse of that discretion. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1073, *reh. denied.* Relevant evidence is not inadmissible merely because it is prejudicial. *Id.*

■ Drake contends that the seizure of the cocaine was the product of a search which went beyond the scope permitted by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In *Terry,* the United States Supreme Court determined that the Fourth Amendment to the United States Constitution[2] permits a police officer to conduct a "stop" and "frisk" in which a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior without probable cause to make an arrest and execute a reasonable search of the person for weapons for the officer's own protection. *Terry, supra,* 22 and 27, 88 S.Ct. at 1880, 1882. When conducting this search, the Court indicated that the officer need not be absolutely certain that the individual was armed but only that a reasonably prudent man in the same circumstances would be warranted in the belief that his safety or that of others is in danger. *Id.* at 27, 88 S.Ct. at 1882. The Court noted that this search should be limited to the outer clothing of such persons in an attempt to discover weapons which might be used to assault the officer or to effect an escape. *Id.* at 30, 88 S.Ct. at 1884; *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 501.

The Court has further determined that the seizure of contraband detected during the lawful execution of a *Terry* search is permissible. *Michigan v. Long* (1983), 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (under "plain view" doctrine, police officer lawfully seized contraband while conducting lawful *Terry* search of interior compartment of automobile). In *Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 the Court extended this doctrine to include contraband

---

2. The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

that is detected through the officer's sense of touch. Adopting this "plain feel" doctrine, the court opined:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson, supra,* at ——, 113 S.Ct. at 2137. The Court explained that regardless of whether the officer detects contraband by sight or by touch, the requirement of the Fourth Amendment that the officer have probable cause to believe the item is contraband before seizing it ensures against excessively speculative seizures. *Id.* Nevertheless, in *Dickerson,* the Court determined that the police officer's continued search of the defendant's pocket to feel a small lump which he then determined to be crack cocaine, *after* concluding that no weapons were present, was not authorized under *Terry* and, thus, the subsequent seizure of the cocaine was unconstitutional. *Id.* 508 U.S. at ——, 113 S.Ct. at 2139.

Recently, in *In the Matter of C.D.T.* (July 26, 1995), Ind.App., 653 N.E.2d 1041, this court addressed a factually similar situation. There, a South Bend police officer conducted a patdown search for weapons of the defendant's outer clothing after reasonably suspecting the defendant of drug dealing. At 1043. After ascertaining that the defendant did not possess any harmful weapons, the officer continued his search, felt a "crumbled plastic baggie" in the defendant's pants pocket, reached into the pocket, and seized the item which contained cocaine. At 1046. This court determined that the officer's continued search after the officer had dispelled his reasonable fear for his safety and the safety of others went beyond the scope of *Terry,* and that the subsequent intrusion into the defendant's pocket and seizure of the contraband was impermissible. At 1047. *Compare United States v. Somers* (7th Cir. 1991), 950 F.2d 1279, *cert. denied* (police

officer's seizure of contraband fell within the scope of *Terry* in which officer felt bulges in pockets of defendant's jacket and determined that each was the approximate size and texture of a small automatic weapon and only after emptying defendant's pockets was it apparent that the bumps were packets of cocaine).

At the suppression hearing, Officer Bliss testified that he conducted his patdown search for the primary purpose of determining whether Drake possessed any weapons. During his search, he felt a solid, firm object in Drake's right pants pocket. Officer Bliss testified that the object did not have the hardness of a gun but he thought the item could have been a knife or a small mace bottle. He stated, "From the feel of the weapon and what I've recovered from prior occasions, a weapon, most commonly found tucked in the corner of a person's pocket, could be a can of mace." Record, p. 86. On cross-examination, Officer Bliss further stated:

> ... The steering column was peeled, what's generally used to peel a steering column is screwdrivers, various size screwdrivers, easily concealable in a waistband or tucked away in a corner of a pocket with of course the blade sticking up. From his movements and that I became very suspicious that he may have something that could be used as a weapon ...

Record, p. 101. Officer Bliss indicated that he asked Drake to remove the item from his pocket and Drake pulled out a wad of cash folded over four times and when he pulled it out, a plastic bag dropped to the ground. Officer Bliss testified that he asked Drake to remove the item for his own safety. He stated:

> I find it works best for me for my safety, you run into needles, you run into razor blades. I've been cut with a razor blade.
>
> \* \* \* \* \* \*
>
> Stems, which are glass tubes or metal tubes that sometimes the [sic] hypes the drug abusers will break off a car antenna to use to smoke rock cocaine. They have glass tubes in their pockets to smoke rock cocaine. I'd rather them reach for it instead of me stick my hands in there. At

the same time the position I had the defendant in was—I had total control over him. I felt confident that if he did draw a weapon from his pocket, if there was a weapon, that I would be able to have total control over [sic] he and the weapons and so forth.

Record, p. 103.

Officer Bliss' testimony reflects that his motivation for the patdown search was to recover any weapons which Drake might have possessed. Upon feeling the object in Drake's pants pocket, Officer Bliss became concerned that it could have been a small can of mace. For this reason and for his own safety, Officer Bliss had Drake remove the item from his pocket.

■ The facts presented here do not run afoul of *Terry*. The purpose of a *Terry* search is to discover guns, knives, clubs, or other hidden instruments which could be used for the assault of the police officer. *Terry, supra,* 392 U.S. at 28, 88 S.Ct. at 1884. Moreover, in determining whether an officer acted reasonably in conducting a search, due weight must be given to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience. *Id.* at 26, 88 S.Ct. at 1883.

Based upon the circumstances before him and his own experience, Officer Bliss had reasonable grounds to believe that the item in Drake's pocket was a weapon and his actions to remove the item from Drake's possession support that conclusion. Unlike the officers in *Dickerson, supra,* and *Matter of C.D.T., supra,* who seized contraband during a search after ascertaining the defendants possessed no weapons, here, Officer Bliss discovered the contraband during the course of his weapons search. Accordingly, we determine that the seizure of the cocaine was completed during a search within the scope of *Terry* and thus, was constitutional. We therefore conclude that the trial court did not err in denying Drake's motion to suppress the cocaine evidence.

Affirmed.

HOFFMAN and NAJAM, JJ., Concur.