688 N.E.2d 221 (1997)
D.H., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A04-9701-JV-33.
Court of Appeals of Indiana.
November 25, 1997.
*222 Annette K. Fancher, Indianapolis, for Appellant-Respondent.
Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee-Petitioner.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Respondent-Appellant D.H. appeals the court's entry of a true finding against him for carrying a handgun without a license, a Class A misdemeanor when committed by an adult.[1]
Affirmed in part, reversed in part, and remanded.

ISSUES
D.H. raises two issues for our review, which we restate as:
1. Whether the court erred in denying his motion to suppress.
2. Whether this cause should be remanded for a new disposition hearing because D.H. was not represented by counsel and did not waive right to counsel at the hearing.

FACTS AND PROCEDURAL HISTORY
On September 12, 1996, Deputy Sheriff Christopher Ragan was on duty as a security officer at an Indianapolis apartment building. The apartment building was locked at all times, but residents could enter by using their key. Nonresidents or residents without a key could be let in by someone inside the building, and nonresidents had to sign in. Deputy Ragan observed fifteen-year-old D.H. enter the building without using a key and walk past the desk without signing in. Deputy Ragan did not recognize D.H. as a resident and suspected that D.H. was trespassing. Accordingly, he stopped D.H. and asked for identification, which D.H. could not provide.
Deputy Ragan observed that D.H.'s pants sagged, and that there was a bulge in his left front pants pocket that D.H. was attempting to conceal. The size and apparent weight of the bulge, coupled with D.H.'s attempt to conceal it, caused Deputy Ragan to suspect that the bulge was a gun. Concerned for his safety, Deputy Ragan conducted a pat down search of the pocket and discovered that the bulge was a loaded handgun. D.H. did not have a license to carry the gun, and Deputy Ragan arrested him for carrying a handgun without a license.
The State filed a petition alleging that D.H. was a delinquent child. At the October 25, 1996, denial hearing, a public defender represented D.H. The court found D.H. to be a delinquent child. At the October 29, 1996, disposition hearing, D.H. appeared with his mother. The court ordered commitment to the Department of Correction for one year.

DISCUSSION AND DECISION

I. MOTION TO SUPPRESS
D.H. contends that the court erred in denying his motion to suppress and admitting the gun into evidence. Specifically, he argues that reasonable suspicion did not exist *223 to justify his stop, and even if it did, Deputy Ragan's search was unjustified.
The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb the trial court's ruling absent a showing of an abuse of discretion. Shinault v. State, 668 N.E.2d 274, 276 (Ind.Ct. App.1996).
The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution guarantee "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable [search and seizure]...." Generally, a judicially issued search warrant is a condition precedent to a lawful search. However, there are a few well-delineated exceptions to this general rule. Shinault, 668 N.E.2d at 276. One exception is the "Terry" investigatory stop and frisk. Id.

A. The "Stop"
A police officer, without a warrant or probable cause, may make a brief investigatory stop of a person if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot." Santana v. State, 679 N.E.2d 1355, 1359 (Ind.Ct. App.1997) (citing Terry v. Ohio, 392 U.S. 1, 19-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968); C.D.T. v. State, 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995)). "Reasonable suspicion entails some minimum level of objective justification for making a stopthat is, something more than an inchoate and unparticularized suspicion or `hunch,' but considerably less than proof of wrongdoing by a preponderance of the evidence." Reeves v. State, 666 N.E.2d 933, 934 (Ind.Ct.App.1996) (quoting Luster v. State, 578 N.E.2d 740, 743 (Ind.Ct.App.1991)). If the facts known by the police officer at the time of the stop are such that a person of reasonable caution would believe that the action taken was appropriate, the Fourth Amendment is satisfied. Id. (citing Bratcher v. State, 661 N.E.2d 828, 831 (Ind.Ct.App.1996)). Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. Id.
In the present case, Deputy Ragan observed D.H. walk into the building without using a key and without signing in. Deputy Ragan did not recognize D.H. as a resident and suspected that he was trespassing. As a guard at the apartment building, it was Deputy Ragan's responsibility to stop D.H. and determine his identity. Deputy Ragan's decision to stop D.H. was not based on an unparticularized suspicion or "hunch" that D.H. was involved in wrongdoing. His decision was based upon a reasonable suspicion that D.H. was a trespasser.

B. The "Frisk"
"When a police officer makes a Terry stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault him." Shinault, 668 N.E.2d at 277 (citing Terry, 392 U.S. at 26-29, 88 S.Ct. at 1883). The officer need not be absolutely certain that the suspect was armed; the search is justified if a reasonably prudent person in the same circumstances would be warranted in believing that his safety or that of others was threatened. Drake v. State, 655 N.E.2d 574, 575 (Ind.Ct.App.1995).
Here, Deputy Ragan noticed a bulge in D.H.'s pocket and that his pants sagged from the weight of the object creating the bulge. The size and apparent weight of the bulge, coupled with D.H.'s attempt to hide it, made Deputy Ragan suspect that the bulge was either a gun or illegal drugs. Deputy Ragan had a reasonable belief that D.H. could have reached into his pocket, pulled out a gun, and shot Deputy Ragan or someone else in an attempt to avoid an arrest. The search was justified.

II. RIGHT TO COUNSEL
D.H. contends that the trial court's disposition is invalid because he (1) had no attorney at the disposition hearing and (2) had not waived his right to counsel. The State concedes that D.H.'s contention is correct.
A juvenile is entitled to assistance of counsel at every stage of the juvenile proceedings, including the disposition hearing. Bridges v. State, 260 Ind. 651, 299 N.E.2d 616, 617 (1973). The record must *224 show either that the juvenile was represented by counsel or that the juvenile waived representation. Adams v. State, 411 N.E.2d 160, 162 (Ind.Ct.App.1980). A juvenile's waiver of his right to counsel must be freely and voluntarily given. M.R. v. State, 605 N.E.2d 204, 206 (Ind.Ct.App.1992).
The record shows that the public defender appeared for D.H.'s denial hearing. The record is devoid, however, of any showing that counsel appeared at D.H.'s disposition hearing or that he waived his right to counsel. Thus, we remand for a new disposition hearing.

CONCLUSION
The court was correct in denying D.H.'s motion to suppress as Deputy Ragan had (1) a reasonable suspicion to stop D.H.; (2) a reasonable concern for his safety and of others to justify the frisk of D.H.; and (3) the authority to seize the weapon located in the frisk. The court erred, however, in conducting the disposition hearing without providing counsel for D.H. or obtaining a waiver of counsel from D.H.
We affirm the trial court's finding in the denial hearing, reverse the disposition, and remand for a new disposition hearing.
NAJAM and HOFFMAN, JJ., concur.
NOTES
[1] Ind.Code 35-47-2-1.